UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

LUCIANO ACEVEDO,

    Plaintiff,

  v.

FLUOR ENTERPRISES, INC.,

    Defendant.

CIVIL NO. 14-2052 (NLH)(AMD)

OPINION

**APPEARANCES:**

STEPHEN LEDVA, JR.
MINTZER SAROWITZ ZERIS LEDVA & MEYERS
2070 SPRINGDALE ROAD
SUITE 400
CHERRY HILL, NJ 08003

    *On behalf of plaintiff*

FANNY ANN FERDMAN
BAKER & HOSTETLER, LLP
45 ROCKEFELLER PLAZA
NEW YORK, NY 10012

    *On behalf of defendant*

**HILLMAN**, District Judge

    Presently before the Court is the motion of defendant for summary judgment on plaintiff's claims that defendant violated his rights under 42 U.S.C. § 1981 and the New Jersey Law Against Discrimination when he was terminated from employment. For the reasons expressed below, defendant's motion will be granted.

**BACKGROUND**

    Defendant, Fluor Enterprises, Inc., hired plaintiff,

Luciano Acevedo, as an insulator helper at its DuPont Chambers Works construction site in Deepwater, New Jersey in March 2011. Fluor has a policy of requiring its employees to submit to a drug test prior to receiving an offer of employment and to random drug tests periodically throughout Fluor's project sites. Plaintiff passed the condition-of-employment drug test in March 2011, as well as a second random drug test on May 9, 2011.

The impetus for this lawsuit is a second random drug test administered on September 4, 2012. This test came back positive, and plaintiff was immediately informed by the collector that it was positive. Plaintiff was sent home from work that day. Defendant then sent the sample to a laboratory to be tested again, and on September 12, 2012, defendant received verification from the laboratory that plaintiff's sample was positive for cocaine. Defendant terminated plaintiff's employment on September 13, 2012.

Plaintiff claims that he does not take cocaine, and that the test was faulty. Plaintiff claims that defendant handled his sample improperly, and defendant refused to return plaintiff's telephone calls regarding his requests to retake the drug test. Plaintiff claims that if defendant had informed him that it would not retest him, and that he could independently obtain another test before the time cocaine metabolizes out the system, he could have proven that he did not take cocaine.

Because defendant contacted him seven days later, past the time cocaine would have remained in his system if he had taken it, plaintiff was unable to prove his innocence.

Plaintiff attributes the alleged broken chain of custody and the stonewalling to his national origin. Plaintiff claims that because he is Dominican, he was subjected to continuous harassment and discrimination facilitated primarily by his Colombian superiors, which defendant failed to rectify despite his numerous complaints. Plaintiff contends that the mishandled drug test and defendant's refusal to help him exonerate himself was the culmination of the discrimination he suffered during his employment by his Colombian coworkers.

## DISCUSSION

A.   **Subject Matter Jurisdiction**

Plaintiff has brought his claims pursuant to 42 U.S.C. § 1981, as well as pursuant to New Jersey state law.[1]  This Court

---

[1]   Plaintiff's national origin claim pursuant to § 1981 fails as a matter of law.  In Saint Francis Coll. v. Al-Khazraji, 481 U.S. 604, 613 (1987), the Supreme Court found that § 1981 protects against discrimination based on race, ancestry, and ethnic characteristics.  The Third Circuit has not specifically determined whether discrimination based on national origin may be subsumed within the category of "ancestry," but the majority of courts in the Third Circuit have found that national origin is not protected by § 1981.  Wesley v. Palace Rehab. & Care Ctr., L.L.C., 3 F. Supp. 3d 221, 233 (D.N.J. 2014) (citing Funayama, 2009 WL 1437656, at *4 (collecting cases)).  Even if such a claim were viable, it would fail, however, for the same reasons as plaintiff's claims arising under the NJLAD.  Sarullo v. U.S. Postal Service, 352 F.3d 789, 797 (3d Cir. 2003)

has jurisdiction over plaintiff's federal claims under 28 U.S.C. § 1331, and supplemental jurisdiction over plaintiff's state law claim under 28 U.S.C. § 1367.

**B.     Summary Judgment Standard**

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to

---

(explaining that the same burden-shifting analytic framework used to analyze § 1981 claims also applies to claims brought under the NJLAD).

be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

    **C.   Analysis**

Plaintiff's claims of discrimination appear to be two-fold. First, it seems that plaintiff is claiming that defendant failed to address national origin discrimination he suffered during his employment at the hands of his Colombian superiors. Second, it seems that plaintiff is claiming that defendant, because of his national origin, failed to remediate the consequences of chain of

5

custody failures arising from his positive drug test.[2] Even accepting as true that (1) plaintiff's Colombian supervisors treated him differently because he is Dominican, and (2) plaintiff did not, and does not, take cocaine, plaintiff has provided absolutely no proof to establish that defendant terminated plaintiff for any reason other than a failed drug test contemporaneously and randomly administered to a broad spectrum of Defendant's employees.

As the New Jersey Supreme Court has long recognized, "New Jersey has a strong interest in maintaining 'discrimination-free workplace[s]' for workers." Cutler v. Dorn, 955 A.2d 917, 923 (N.J. 2008) (citing Lehmann v. Toys 'R' Us, Inc., 626 A.2d 445,

---

[2] Plaintiff's brief in opposition to defendant's motion for summary judgment could also be read to allege that defendant intentionally mishandled the drug test because plaintiff is Dominican in order to fabricate a reason for his termination. If plaintiff has intended to make such a claim, plaintiff has not provided any evidence to support it.

Relatedly, plaintiff's complaint contains a claim for negligence relating to the handling of plaintiff's urine sample. Plaintiff claims that because the sample collector did not sign the custody affidavit, and an unknown person did, the test was flawed. Plaintiff provides no support for this conclusory allegation or otherwise provides evidentiary support for his negligence claim. Plaintiff also does not refute defendant's evidence that demonstrates that proper collection and chain of custody procedures were followed, both generally and specifically as it relates to plaintiff's sample.

6

452 (1993)).  The NJLAD makes it an unlawful

> [f]or an employer, because of the race, creed, color, national origin, ancestry, age, marital status, affectional or sexual orientation, sex ... of any individual, ... to refuse to hire or employ or to bar or to discharge ... from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

Lehmann, 626 A.2d at 452 (citing N.J.S.A. 10:5-12(a)).[3]

To prove employment discrimination under the NJLAD, New Jersey courts have adopted the burden-shifting analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See, e.g., Victor v. State, 4 A.3d 126, 140-141 (N.J. 2010) (observing that "employment discrimination claims [under the NJLAD] proceed in accordance with the McDonnell Douglas burden-shifting paradigm"); Viscik v. Fowler Equip. Co., 800 A.2d 826, 833 (N.J. 2002) (recognizing that New Jersey "courts have adopted the burden-shifting framework articulated in McDonnell Douglas ... to prove disparate treatment under LAD").

The first step in the McDonnell Douglas analysis requires the plaintiff to demonstrate that he can meet each of the elements of

---

[3]   The current version of Section 10:5-12(a) now also prohibits discrimination or harassment based on civil union status, domestic partnership status, genetic information, gender identity or expression, and disability.  N.J.S.A. 10:5-12(a).

7

the prima facie case.  Victor, 4 A.3d at 141.  "There is no single prima facie case that applies to all employment discrimination claims.  Instead, the elements of the prima facie case vary depending upon the particular cause of action."  Id.

In general, where a plaintiff's claim arises from allegations of discriminatory discharge based on national origin, the "plaintiff must demonstrate: (1) that plaintiff is in a protected class; (2) that plaintiff was otherwise qualified and performing the essential functions of the job; (3) that plaintiff was terminated; and (4) that the employer thereafter sought similarly qualified individuals for that job."  Id.  (citing Clowes v. Terminix Int'l, Inc., 538 A.2d 794, 805 (N.J. 1988)).  To the extent that plaintiff in this case makes a disparate treatment claim in addition to a discriminatory discharge claim,[4] in order to

---

[4]   It is unclear whether plaintiff has also asserted a claim for hostile work environment based on national origin.  To prove such a claim, plaintiff must show that the complained-of conduct "(1) would not have occurred but for his protected status, and was (2) severe or pervasive enough to make a (3) reasonable person believe that (4) the conditions of employment have been altered and that the working environment is hostile or abusive."  Shepherd v. Hunterdon Developmental Ctr., 174 N.J. 1, 24, 803 A.2d 611 (2002) (citing Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 603-04, 626 A.2d 445 (1993)).  Plaintiff's conclusory allegations that the Colombian supervisors harassed Dominican workers to the extent necessary to rise to a hostile work environment claim is completely unsupported.

8

successfully prove a disparate treatment claim under the NJLAD, a plaintiff must prove by a preponderance of the evidence a prima facie case by proving that the plaintiff was: (1) a member of a protected group; (2) he was qualified for his job; and (3) he was subjected to some adverse employment action "while others, not in the protected class, were treated more favorably." Massarsky v. General Motors Corp., 706 F.2d 111, 118 (3d Cir. 1983).

Establishing "a prima facie case gives rise to a presumption that the employer unlawfully discriminated against the employee." Bergen Commercial Bank, 723 A.2d at 955 (citing Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981)).  After the plaintiff establishes a prima facie case, "the burden of going forward shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action." Viscik, 800 A.2d at 833.  If the employer is able to articulate such a reason, "the burden shifts back to the plaintiff to show that the employer's proffered reason was merely a pretext for discrimination." Id.

Here, even if plaintiff could establish a prima facie case of discriminatory discharge and disparate treatment, plaintiff has not provided any proof to rebut defendant's reason for his termination.  The results of plaintiff's drug test came back

9

positive at the initial sample testing, and again after lab verification.  Plaintiff does not dispute that a positive drug test is grounds for immediate termination.

In an attempt to cast a shadow of discrimination over the drug testing process, plaintiff contends that the sample collector, plaintiff's supervisors of Colombian national origin, and the company conspired to cause his sample to be deemed positive for cocaine and prevent him from taking a timely retest to prove his innocence, all because he is of Dominican national origin who complained about mistreatment by the Colombian supervisors.  Plaintiff's proffered proof to support this theory is that the word "NEG" was written on his copy of the drug test form given to him by the collector, and that defendant did nothing to stop the Colombian employees from harassing the Dominican employees.

With regard to the drug test form, defendant has submitted documents that the carbon copy retained by the collector does not contain the word "NEG" on it, and that the handwriting on plaintiff's copy is not the collector's.  It is unclear how the word "NEG" appeared on plaintiff's copy of the collection form, but it cannot support the inference that plaintiff's test was actually negative.  Plaintiff was informed by the collector

10

immediately that his test was positive, and the same notation is not on the collector's carbon copy.

As for plaintiff's claim that defendant failed to address the discrimination by the Colombian supervisors, and that the Colombian supervisors harassed Dominican employees and targeted them for termination, plaintiff has not provided any evidence to support this claim, other than his conclusory allegation that he and two other Dominicans spoke to a human resource manager about the harassment, but the manager's notes only reflected positive comments from the employees.

In contrast to plaintiff's claims, the record shows that employees of several national origins were subjected to the random drug test at the same time as plaintiff, and that at least five other employees of various national origins were terminated for testing positive for drugs.  The record also shows that even after plaintiff's termination and defendant's contract at the work site expired, five insulators of Dominican origin continued to work for the same Colombian supervisors.  This evidence directly contradicts plaintiff's contention that defendant engaged in a conspiracy to purposefully mishandle his drug test in order to terminate him due to his Dominican national origin and complaints about harassment.

11

**CONCLUSION**

The Court is satisfied that the materials in the record demonstrate that there is no genuine issue as to any material fact on plaintiff's claims that he was terminated from employment because of his national origin.  The record does not support any basis for termination other than a positive result on a random drug test, which also caused the termination of several employees of various national origins at the same time as plaintiff.  Accordingly, defendant is entitled to summary judgment on all of plaintiff's claims.

    An appropriate Order will be entered.


Date: February 19, 2016            s/ Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.